Edward Philip Dabdoub, #45685
**Dabdoub Law Firm, PA.**
1600 Ponce de Leon Blvd, Suite 1202
Coral Gables, FL 33134
Telephone: (305) 754-2000
Facsimile: (305) 754-2007
eddie@longtermdisability.net

*Attorney for Plaintiffs*

Brian S. King, #4610*
**BRIAN S. KING, P.C.**
420 East South Temple, Suite 420
Salt Lake City, UT 84111
Telephone: (801) 532-1739
Facsimile: (801) 532-1936
brian@briansking.com

*Attorney for Plaintiffs*

*\*Admitted Pro Hac Vice*

## THE UNITED STATES DISTRICT COURT
## IN AND FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| RUSSELL M. *and* B.M., <br><br> *Plaintiffs,* <br><br> *vs.* <br><br> UNITED HEALTHCARE INSURANCE COMPANY *and* UNITED BEHAVIORAL HEALTH, <br><br> *Defendants.* | **PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** <br><br> Case No. 9:25-cv-81546-EA <br><br> Judge Ed Artau |

Plaintiffs Russel M. and B.M. (collectively "Plaintiffs"), by and through counsel, hereby oppose Defendants United Healthcare Insurance Company and United Behavioral Health's (collectively, "United") Motion to Dismiss (ECF No. 26) ("the Motion"), pursuant to Fed. R. Civ. P. 12(b)(6) and S.D. Fla. Loc. R. 7.1(c).

## INTRODUCTION

Defendants' Motion invites the Court to issue a premature ruling on the merits of Plaintiffs' claims, based in part on an exception to the general rule that extrinsic evidence may not be considered on a motion to dismiss. However, the fact that Defendants may present the Court with the full text of Plaintiffs' employee welfare benefits plan does not empower them to insist that the Court accept their interpretation of the facts. Moreover, the Court should view Defendants' Motion with a heavy dose of skepticism, because, as set forth herein, it repeatedly misstates the allegations in the Complaint and ignores prevailing law on an insurer's liability for Employee Retirement Income Security Act of 1974 ("ERISA") violations. The Court could certainly conclude Plaintiffs failed to state a claim upon which relief can be granted if it engaged in a highly selective reading of the Complaint and drew factual inferences in United's favor, as their Motion proposes. But that is not how motions to dismiss work. Accordingly, the Court should deny the Motion.

## RESPONSE TO STATEMENT OF FACTS

Plaintiffs do not dispute the Statement of Facts set forth in the Motion to the extent it quotes the Complaint directly, and affirmatively state that the allegations in the Complaint speak for themselves. However, Plaintiffs object that the Motion's presentation of the facts is inappropriately argumentative, for example, asserting that "The Plan's Terms Control," which is a legal conclusion, not an objective statement of fact.[1] Additionally, Plaintiffs object that, as set

---

[1] ECF No. 26 at 4.

forth more fully herein, Defendants omit multiple allegations which undermine their arguments for dismissing the Complaint. Plaintiffs agree that the Court should base its ruling on a "careful, context-specific scrutiny of a complaint's allegations," but contend that the Motion's Statement of Facts does not reflect such.[2]

## **LEGAL STANDARD**

To withstand a motion to dismiss under Rule 12(b)(6), a complaint must include "enough facts to state a claim to relief that is plausible on its face."[3] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[4] When evaluating these facts, the Court is to "accept[] the allegations in the complaint as true and draw[] all reasonable inferences in favor of the plaintiff."[5] Additionally, in ERISA cases, where a term of the plan at issue is ambiguous, i.e., "susceptible to two or more reasonable interpretations that can be fairly made," courts apply "the rule of *contra proferentem*[,] . . . constru[ing] any ambiguities against the drafter."[6]

As this Court has explained to United in the past, a plaintiff need not meet any heightened pleading requirement when bringing an ERISA claim.[7] Rather, they need only meet the low

---

[2] *Id.* at 7 (quoting *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014)) (cleaned up).
[3] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).
[4] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
[5] *M.H. v. Omegle.Com LLC*, 122 F.4th 1266, 1270 (11th Cir. 2024) (citing *Wiersum v. U.S. Bank, N.A.*, 785 F.3d 483, 485 (11th Cir. 2015)); *see also Tims v. LGE Cmty. Credit Union*, 935 F.3d 1228, 1236 (11th Cir. 2019) (citing *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003)). Notably, this well-established rule is omitted from the Motion's recitation of the applicable standard of review. *See generally* ECF No. 26 at 7-8.
[6] *Alexandra H. v. Oxford Health Ins. Inc.*, 833 F.3d 1299, 1307 (11th Cir. 2016) (cleaned up).
[7] *Morera v. Unitedhealthcare Ins. Co.*, 757 F. Supp. 3d 1308, 1312 (S.D. Fla. 2024) ("Modern pleading standards simply do not demand this level of specificity.") (citing *Twombly*, 550 U.S. at 545 ("[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations[.]")); *accord Schied v. Dynegy, Inc. (In re Dynegy, Inc. ERISA Litig.*), 309 F. Supp. 2d 861, 867 (S.D. Tex. 2004) (same); *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 284 F. Supp. 2d 511, 652 (S.D. Tex. 2003) (same); *and Rankin v. Rots*, 278 F. Supp. 2d 853, 868 (E.D. Mich. 2003) ("Overall, [defendants'] motion to dismiss is really an attempt to obtain summary

pleading threshold of Rule 8(a), which requires "a short and plain statement of the claim showing that [they are] entitled to relief." "That is the standard against which Plaintiffs' allegations will be measured in this case."[8] The Supreme Court has cautioned against "impermissibly appl[ying] what amount[s] to a heightened pleading requirement by insisting that [the plaintiff] allege 'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief."[9] This is especially so in an ERISA case where the plaintiff may lack access to certain details within the defendant's control.[10]

### ARGUMENT

The Court should find the Complaint sufficiently alleges multiple violations of ERISA and MHPAEA and deny Defendants' Motion because (1) it is based on a selective reading of the Complaint that inaccurately depicts Plaintiffs' allegations made therein; (2) its arguments rely almost entirely on policy exclusions, which are affirmative defenses that are invalid grounds for dismissal; (3) it fails to address the many procedural ERISA violations alleged in the Complaint, which are independent legal grounds for relief; (4) it seeks dismissal of Plaintiffs' MHPAEA claim based on a lack of information that Defendants refused to provide to Plaintiffs during the prelitigation appeals process; and (5) the ERISA and MHPAEA claims are not duplicative.

---

judgment and require [plaintiff] to state her claims with a level of particularity not called out in ERISA and not within her ability at this stage in the case").

[8] *Woods v. S. Co.*, 396 F. Supp. 2d 1351, 1359-60 (N.D. Ga. 2005).

[9] *Twombly*, 550 U.S. at 569-70 (citing *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508).

[10] *See Abira Med. Lab'y v. Wellcare Health*, No. 8:24-cv-1278, 2025 U.S. Dist. LEXIS 169348, at *15 (M.D. Fla. Jul. 22, 2025) ("Thus, ERISA plaintiffs should not be held to an excessively burdensome pleading standard that requires them to identify particular plan provisions in ESIRA contexts when it may be extremely difficult for them to access such plan provisions.") (quoting *Inova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 728 (5th Cir. 2018) (collecting cases)) (internal quotation marks omitted).

## I.    THE MOTION MISREPRESENTS FACTS TO SUPPORT ITS CASE FOR DISMISSAL.

When considering a Rule 12(b)(6) motion to dismiss, the Court must "read the complaint as a whole."[11] Consequently, the moving defendant may not prevail where their arguments rely on a selective reading of the plaintiff's allegations.[12] Concerningly, United does this repeatedly in its Motion, which should weigh heavily against dismissal from the outset.

For example, the Motion asserts that "Plaintiffs fail to refer to any specific provision within the Plan that was plausibly violated and/or that warrants additional out-of-network benefits," and that the Complaint contains only "conclusory allegations" to that effect.[13] Yet the Complaint contains many references to specific Plan provisions and discusses how United violated them and why Plaintiffs are entitled to benefits under the Plan.[14] Defendants may disagree with Plaintiffs' theory of the case (indeed, that is to be expected), but that does not mean Plaintiffs failed to plausibly allege their claims, and the Court should not allow itself to be misled by the Motion's bald assertions to that effect.

The Motion also states that the Complaint alleges only that "precertification was involved" with their request for benefits for B.M.'s treatment at Discovery, and that Defendants' "out-of-network denial rationale . . . is moot because it was part of the 'precertification process.'"[15] This tells only part of the story: the Complaint describes how Plaintiffs were confused by the apparently

---

[11] *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1252 n.11 (11th Cir. 2005) (citing *Magluta v. Samples*, 375 F.3d 1269, 1274-75 (11th Cir. 2004)).

[12] *See, e.g.*, *Prairie Ventures v. Liotta*, No. 1:16-CV-2966, 2017 U.S. Dist. LEXIS 234796, at *19 (N.D. Ga. Aug. 3, 2017) (rejecting an argument for dismissal that "rest[ed] on a selective reading of the specific allegations in the . . . [c]omplaint."); *Buford v. Miami-Dade Cty.*, No. 17-22149-CIV, 2018 U.S. Dist. LEXIS 3356, at *14 (S.D. Fla. Jan. 9, 2018) (Denying motion to dismiss, in part, because the police detective defendants' "selective reading of the Amended Complaint cannot be the ground upon which qualified immunity is granted at this stage.").

[13] ECF No. 26 at 8-9, 11.

[14] *See, e.g.*, ECF No. 1 at ¶¶ 17-22, 32-38, 44-47 & 54.

[15] ECF No. 26 at 10-11 (citing ECF No. 1 at ¶¶ 46-47, 53).

circular logic of Defendants' denial of a preauthorization request on the basis of a policy exclusion that explicitly made an exception for preauthorized services.[16] United failed to explain (and still has not explained, despite taking the liberty to freely discuss their theory of the case in a motion to dismiss) why preauthorization was denied, leaving Plaintiffs in the dark about how they could obtain coverage for medically necessary care out-of-network that was unavailable to them in-network, an outcome specifically contemplated by their Plan.[17] Moreover, alarmingly, United omitted the fact that the Plan explicitly stipulates that out-of-network mental health care obtained without preauthorization results only in a reduction of the allowed amount, not a denial of coverage.[18] Just as Plaintiffs "cannot alter the language of the Plan" in their Complaint, Defendants may not do so in their Motion.[19]

Finally, the Motion presents an incomplete picture of Plaintiffs' MHPAEA-related allegations. First, Defendants claim that "Plaintiffs do not plausibly allege the 'analogous levels of medical or surgical benefits' that the plan covers," but the Complaint does exactly that at multiple points.[20] They then address only one of the ways Plaintiffs allege the denial of treatment at Wingate violated MHPAEA, conveniently omitting from their citation the preceding paragraph in the complaint which, when read together, asserts that United adheres to generally accepted standards of medical practice in processing medical/surgical claims but deviates from them in processing comparable mental health claims.[21] The Motion neither acknowledges nor addresses

---

[16] ECF No. 1 at ¶ 44.

[17] *See* ECF No. 1 at ¶¶ 41-48, 51-54 & 56-57.

[18] *Compare* ECF No. 26-2 at 102 ("If you do not obtain prior authorization as required [for Mental Health Care], the amount you are required to pay will be increased to 50% of the allowed amount.") *with* ECF No. 26-2 at 89 ("If you do not obtain prior authorization as required [for Diabetes Services], you will be responsible for paying all charges and no Benefits will be paid.").

[19] ECF No. 26 at 11.

[20] ECF No. 26 at 15 (citing ECF No. 1 at ¶¶ 78-80); *and see* ECF No. 1 at ¶¶ 23, 48 & 76.

[21] *See* ECF No. 1 at ¶¶ 77-78; *and* ECF No. 26 at 15 (citing ECF No. 1 at ¶¶ 78-80).

these allegations.[22] Instead, it (ironically) asserts that the Complaint makes merely conclusory allegations that Defendants violated MHPAEA, when in fact, it contains detailed allegations of the facts underlying each of Plaintiffs' theories of MHPAEA liability.[23] Moreover, Plaintiffs already explained these theories in their prelitigation appeals, so it is disingenuous for United to now suggest it lacks fair notice of these claims.[24]

It is bad enough that Defendants come before the Court asking it to rule on Plaintiffs' claims based on Defendants' self-serving interpretation of the Complaint and without the benefit of an administrative record. It is all the more troubling that they should do so based on an incomplete and erroneous presentation of its contents. As a threshold matter, Plaintiffs respectfully entreat the Court, in considering this Motion, to base its decision on its own careful review of the Complaint as a whole, rather than on Defendants' depiction of the facts it alleges.

## II.     PLAN EXCLUSIONS ARE AN INVALID BASIS FOR DISMISSAL.

It is well established that a "policy exclusion is generally regarded as an affirmative defense."[25] It is likewise well settled that "a plaintiff *is not required* to negate an affirmative defense in its complaint," and as such, "generally, the existence of an affirmative defense will not support a motion to dismiss[, and a] Plaintiff is under no obligation to anticipate affirmative defenses or to include relevant facts pleading around defenses in his Complaint."[26] This Court has

---

[22] *See generally* ECF No. 26 at 12-18.

[23] ECF No. 26 at 2; *and see* ECF No. 1 at ¶¶ 12-19, 23-24, 34-39 & 45-49.

[24] Notably, this would also seem to confirm Plaintiffs' allegation that United did not meaningfully review their appeals, as ERISA requires. *See* ECF No. 1 at ¶¶ 63-65.

[25] *Morera*, 757 F. Supp. 3d at 1313 (citations omitted).

[26] *Id.* (cleaned up) (quoting *Twin City Fire Ins. Co. v. Hartman, Simons & Wood, LLP*, 609 F. App'x 972, 976-77 (11th Cir. 2015)); *see also Garcon v. United Mut. of Omaha Ins. Co.*, 779 F. App'x 595, 599-600 (11th Cir. 1998) (holding that an insurer bears the burden of proving an exclusion applies to a claimed benefit in an ERISA case); *and Prelutsky v. Greater Ga. Life Ins. Co.*, 692 F. App'x 969, 972 (11th Cir. 2017) ("[T]he burden is on the administrator to show that the exclusion prevents coverage.") (cleaned up).

previously rejected attempts by United to dismiss ERISA claims based on policy exclusions.[27] It should do so again in the present action.

Defendants' arguments for dismissing the Complaint all rely on their assertion that Plaintiffs' claims were subject to exclusions within the Plan—namely, an Alternative Treatments exclusion and an Out-of-Network exclusion.[28] However, these are affirmative defenses that Defendants ultimately bear the burden of proving, and it would be inappropriate to dismiss Plaintiffs' claims on that basis. This alone is grounds for denying the Motion in its entirety.

### III. UNITED'S REPEATED VIOLATIONS OF ERISA'S PROCERUDAL REQUIREMENTS ALONE ARE ENOUGH TO GRANT PLAINTIFFS RELIEF.

In addition to overlooking alleged facts that cut against their request for dismissal, as discussed above, Defendants also overlook several important legal theories that would entitle Plaintiffs to relief on their first cause of action. ERISA imposes both substantive and procedural requirements upon administrators, and procedural violations alone are sufficient to warrant judicial reversal of an adverse benefits determination.[29] Defendants' motion entirely ignores this reality, zeroing in instead on Plaintiffs' allegations of substantive ERISA violations. As explained at length below, the Complaint is replete with allegations of critical procedural defects in United's

---

[27] *Morera*, 757 F. Supp 3d at 1313 ("In any event, Plaintiff need not plead around exclusions in his complaint *at all*. The Court reminds [United] that a policy exclusion is generally regarded as an affirmative defense.") (citations omitted).

[28] *See generally* ECF No. 26 at 9-10, 15-17.

[29] *See, e.g.*, *Melech v. Life Ins. Co. of N. Am.*, 739 F.3d 663, 676 (11th Cir. 2014) (reversing denial of benefits based on the "procedural unfairness created by [the administrator]'s approach," which was "inconsistent with the fundamental requirement that an administrator's decision to deny benefits . . . must be the product of a fair claim-evaluation process."); *Boysen v. Ill. Tool Works, Inc.*, 767 F. App'x 799, 806 (11th Cir. 2019) ("Here, however, the initial question is not whether the plan administrator erred in interpreting or applying the plan. We are instead reviewing whether the plan administrator adequately complied with the procedural aspects of the applicable statutes and regulations . . . ."); and *Harris v. Pullman Standard, Inc.*, 809 F.2d 1495, 1499 (11th Cir. 1987) (affirming judgment for plaintiff, in part because the administrator "violated the procedural requirements of ERISA," recognizing that "the quantity of an employer's procedural violations may work a substantive harm.") (citation omitted).

review of Plaintiffs' claims.[30] Thus, even if it were to accept Defendants' arguments, the Court should nevertheless deny the Motion because it entirely fails to address these independent grounds for relief, and these fatal omissions may not be cured in their reply.[31]

First, ERISA requires claims administrators to provide participants with "a full and fair review" of their claims on appeal.[32] This requires, at a minimum, that administrators "take[] into account all comments, documents, records, and other information submitted by the claimant relating to the claim . . . ."[33] In other words, they must "fully investigate . . . claims before denying benefits," and "adequately address the issues raised in [a participant]'s appeal."[34] They "cannot refuse to consider key relevant information, or to investigate further when faced with potentially conflicting evidence, or deny access to information that is potentially beneficial to a claimant."[35]

---

[30] The Complaint also explicitly identifies procedural defects as a basis for liability. *See* ECF No. 1 at ¶¶ 63-68.

[31] *See* S.D. Fla. Loc. R. 7.1(c)(1) ("[A] reply memorandum shall be strictly limited to rebuttal of matters raised in the memorandum in opposition . . . ."); *Santana v. Starwood Hotels & Resorts Worldwide, Inc.*, No. 18-23613-Civ, 2019 U.S. Dist. LEXIS 202161, at *13 (S.D. Fla. Nov. 20, 2019) ("We need not consider these arguments because a party cannot introduce new . . . arguments in a reply brief.") (citations and internal quotation marks omitted); *Katchmore Luhrs, LLC v. Allianz Glob. & Corp. Specialty*, No. 15-23420-CIV, 2016 U.S. Dist. LEXIS 58616, at *2-3 (S.D. Fla. May 3, 2016) ("[I]t is improper for a party to raise a new argument in its reply.") (citation omitted); *and Herring v. Sec. Dep't of Corr.*, 397 F.3d 1338, 1342 (11th Cir. 2005) ("As we repeatedly have admonished, arguments raised for the first time in a reply brief are not properly before a reviewing court.").

[32] 29 U.S.C. § 1133(2).

[33] 29 C.F.R. §§ 2560.503-1(h)(2)(iv); *see also Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003) ("Plan administrators, of course, may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician."); *and Miller v. PNC Fin. Servs. Grp.*, 278 F. Supp. 3d 1333, 1345 (S.D. Fla. 2017) ("[Defendant] cannot just ignore inconvenient evidence.") (citing *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 118 (2008)) (second citation omitted).

[34] *Capone v. Aetna Life Ins. Co.*, 592 F.3d 1189, 1199-1200 (11th Cir. 2010).

[35] *Boysen*, 767 F. App'x at 811.

Many courts (including this district) interpret the "full and fair review" requirement as mandating that administrators "engage in a meaningful dialogue" with the claimant.[36]

Plaintiffs' appeals raised multiple concerns and arguments, supported by accompanying documentation and evidence, most of which Defendants did not address in their responses. For example, Plaintiffs' level two appeal argued and provided evidence that B.M.'s treatment at Wingate was not experimental, investigational, or unproven.[37] Not only did United not address these arguments, they declined to consider or respond to Plaintiffs' level two appeal *at all*.[38] United also never addressed Plaintiffs' argument that B.M.'s treatment at Wingate was a covered "Alternate Facility," and not a "wilderness therapy" program, to which United simply reiterated its bald assertion that Wingate was a non-covered wilderness therapy program.[39] Likewise, Plaintiffs argued that B.M. had to receive treatment at Discovery because there were no suitable in-network providers available, and that they had tried to obtain preauthorization for the treatment

---

[36] *See, e.g.*, *Sami v. Guardian Life Ins. Co. of Am.*, No. 23-cv-20168, 2024 U.S. Dist. LEXIS 128448 (S.D. Fla. Jul. 22, 2024) (citing *Abram v. Cargill, Inc.*, 395 F.3d 882, 885 (8th Cir. 2005)); *Marajh v. Broadspire Servs.*, No. 07-60975-CIV, 2008 U.S. Dist. LEXIS 99757, at *18 (S.D. Fla. Nov. 21, 2008) (citing *Metzger v. UNUM Life Ins. Co. of Am.*, 476 F.3d 1161, 1168 n.4 (10th Cir. 2007)); *and Gharagozloo v. Aetna Life Ins. Co.*, No. 08-23349-CIV, 2009 U.S. Dist. LEXIS 102988, at *39-40, 42 (S.D. Fla. Nov. 9, 2009) (citing *Patrick v. Hewlett-Packard Co. Emp. Benefits*, 638 F. Supp. 2d 1195, 1210 (S.D. Cal. 2009)); *accord Boysen*, 767 F. App'x at 811 ("[T]he law anticipates, where necessary, some back and forth between administrator and beneficiary.") (quoting *Harrison v. Wells Fargo Bank, N.A.*, 773 F.3d 15, 21 (4th Cir. 2014)) (internal quotation marks omitted).

[37] ECF No. 1 at ¶¶ 34-39.

[38] *Id.* at ¶ 40; *see also Prolow v. Aetna Life Ins. Co.*, 584 F. Supp. 3d 1118, 1141-43 (S.D. Fla. 2022) (reversing an adverse benefits determination where the administrator failed to fully consider the participant's evidence that the treatment in question was not "Experimental/Investigational"); *and Boysen*, 767 F. App'x at 808 (reversing adverse benefits determination where administrator "refuse[d] to consider [the claimant's] evidence," observing that "[c]utting off even one avenue to challenge the determination would have been problematic, but the process here effectively made it impossible for [the claimant] to oppose the decision.").

[39] *Compare* ECF No. 1 at ¶¶ 17-22, 32-33 *with* ECF No. 1 at ¶¶ 27-28, 40.

but were denied on the basis of a Plan term that contains an exception for preauthorized services.[40]

United's responses to Plaintiffs' appeals for Discovery did not address any of those arguments, and merely reiterated that the treatment was "out-of-network"—in fact, it issued verbatim responses to both appeal requests.[41] The allegations in the Complaint clearly depict a manifest failure by United to give Plaintiffs a "full and fair review" of their claims and engage in a "meaningful dialogue" with them about their claims; this, standing alone, is enough for Plaintiffs to prevail on their first cause of action, which precludes dismissal of that claim.

ERISA also requires claims administrators to "provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied," which must "set[] forth the specific reasons for such denial . . . ."[42] Many courts give effect to this provision and the requirement for a "full and fair review" by limiting administrators' arguments in litigation to the rationales given during the appeals process.[43] This Court should follow suit.

---

[40] *See* ECF No. 1 at ¶¶ 44-48, 53-54.

[41] *See Id.* at ¶¶ 42, 51-52 & 57.

[42] 29 U.S.C. § 1133(1).

[43] *See, e.g.*, *White v. Reliance Std. Life Ins. Co.*, No. 1:05-cv-2149, 2007 U.S. Dist. LEXIS 4633, at *17-29 (N.D. Ga. Jan. 22, 2007) (finding administrator failed to provide "full and fair review" by relying on evidence it did not provide to Plaintiffs until after their appeals were exhausted, depriving them of an opportunity to respond); *Harris v. Aetna Life Ins. Co.*, 379 F. Supp. 2d 1366, 1372-74 (N.D. Ga. Jul. 14, 2005) (same); *Tippitt v. Reliance Standard Life Ins. Co.*, 276 F. App'x 912, 915 (11th Cir. 2008) (clarifying that "[a] district court may choose not to accord self-serving post-hoc explanations much weight" and acknowledging the underlying reason for such a ruling) (citation omitted); *Univ. Hosps. v. Emerson Elec. Co.*, 202 F.3d 839, 849 n.7 (6th Cir. 2000) (courts should not consider post-hoc denial rationales); *Skretvedt v. E.I. Du Pont de Nemours & Co.*, 268 F.3d 167, 177 (3d Cir. 2001) (same); *Glista v. UNUM Life Ins. Co. of Am.*, 378 F.3d 113, 132 (1st Cir. 2004) (same); *Pitt v. Am. Sec. Life Ins. Co.*, 931 F.2d 351, 356-57 (5th Cir. 1991) (post-hoc denial rationales deemed waived); *Lauder v. First Unum Life Ins. Co.*, 284 F.3d 375, 380 (2d Cir. 2002) (same); *Marolt v. Alliant Techsystems*, 146 F.3d 617, 620 (8th Cir. 1998) ("We will not permit ERISA claimants denied the timely and specific explanation to which the law entitles them to be sandbagged by after-the-fact plan interpretations devised for purposes of litigation."); *Thompson v. Life Ins. Co. of N. Am.*, 30 F. App'x 160, 164 (4th Cir. 2002) (same); *Halpin v. W.W. Grainger, Inc.*, 962 F.2d 685, 696 (7th Cir. 1992) (same); *D.K. v. United Behav. Health*, 67 F.4th 1224, 1241-42 (10th Cir. 2023) (same) (citations omitted).

United's Motion makes several arguments justifying its denial of coverage for B.M.'s treatment that it did not articulate in any of its denial notices. For example, United claims for the first time that B.M.'s treatment at Wingate was not covered, in part, because it was not preauthorized.[44] This rationale was also never articulated explicitly in United's denials of coverage for B.M.'s treatment at Discovery; in fact, United completely ignored Plaintiffs' requests for clarification regarding their requests for preauthorization of those claims.[45] The Court should not allow United to raise these arguments for the first time in litigation, whether for purposes of this Motion or for any future dispositive proceedings. To do so would be fundamentally unfair to Plaintiffs and undermine the very purpose of the ERISA prelitigation appeals process. Allowing administrators like United to cure such procedural defects in litigation would create a perverse incentive for them to deploy lackluster and procedurally deficient appeals processes that flout ERISA's requirements and deprive participants of the "full and fair review" to which they are entitled. The Court should therefore deny the Motion to the extent it relies on such *post hoc* rationales to justify dismissal.

Relatedly, an administrator is also required to include in its denial notices "[a] description of any additional material or other information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary."[46] An adverse benefits determination is therefore "unreasonable if it fail[s] to identify what objective evidence the claimant could have or should have produced . . . ."[47]

---

[44] *Compare* ECF No. 26 at 11 *with* ECF No. 1 at ¶¶ 14, 27-28 & 40.
[45] *Compare* ECF No. 26 at 10-11 *with* ECF No. 1 at ¶¶ 42, 44, 51-53 & 56-57.
[46] 29 C.F.R. § 2560.503-1(g)(iii).
[47] *Creel v. Wachovia Corp.*, No. 08-10961, 2009 U.S. App. LEXIS 1733 (11th Cir. Jan. 27, 2009) (citing *Oliver v. Coca-Cola Co.*, 497 F.3d 1181, 1196-97 (11th Cir. 2007), *vacated in part on other grounds*, 506 F.3d 1316 (11th Cir. 2007)).

Defendants' Motion points to a statement in the Plan that purportedly requires Plaintiffs to go through their in-network physician to obtain coverage for out-of-network services as another basis for denying coverage and dismissing the Complaint.[48] This was yet another denial rationale that United failed to articulate to Plaintiffs during the appeals process.[49] More importantly, if United required this for Plaintiffs to obtain coverage for B.M.'s treatment, it was incumbent upon them to state as much in their initial denial notices. Their failure to do so was unreasonable as a matter of law, which precludes dismissing the Complaint on that basis.

Finally, it is well established that "an ERISA participant has a right to accurate information, and that an ERISA plan administrator's withholding of information may give rise to a cause of action for breach of fiduciary duty."[50] The same is true of material misrepresentations and misleading communications.[51]

Defendants lied and misled Plaintiffs at multiple points during the appeals process for B.M.'s treatment at Wingate. First, they sent a letter responding to the level one appeal that literally said it could not be processed because "the [appeal] request was not received within the [Insert Request (Timely Filing)] [sic] day period . . . ."[52] This was not only strange and confusing, but it was also false; Plaintiffs submitted their level one appeal well within the time period set forth by the Plan.[53] That notion was seemingly confirmed by Defendants' subsequent letter, sent a few

---

[48] ECF No. 26 at 10-11 (first quoting ECF No. 26-2 at 45; and then quoting ECF No 26-4 at 45).

[49] *See generally* ECF No. 1 at ¶¶ 14, 27-28, 40, 42, 44, 51-53 & 56-57.

[50] *Jones v. Am. Gen. Life & Accident Ins. Co.*, 370 F.3d 1065, 1072 (11th Cir. 2004) (citations omitted).

[51] *Id.* (citations omitted).

[52] ECF No. 1 at ¶ 27.

[53] *Compare* ECF No. 26-2 at 52 ("Your first appeal request must be submitted to us within 365 days after you receive the denial of a pre-service request for Benefits or the claim denial.") *with* ECF No. 1 at ¶ 27 (identifying issue date of denial notice as May 8, 2023) *and* ECF No. 1 at ¶ 15 ("On October 24, 2023, Russell submitted a level one appeal . . . .").

weeks later, responding to the appeal request and upholding the denial of benefits.[54] This second letter informed Plaintiffs that their next step would be to submit a level two appeal.[55] Plaintiffs did so and, as discussed above, United responded claiming they could not submit a second appeal and had already exhausted their administrative remedies.[56] United's dishonest and misleading communications during the appeals process regarding coverage for B.M.'s treatment at Wingate was not only a far cry from the "full and fair review" and "meaningful dialogue" that ERISA requires, but also a grave breach of their fiduciary duties under ERISA, which further precludes dismissal of the Complaint at this stage of the litigation.

## IV.    PLAINTIFFS' MHPAEA CLAIM IS SUFFICIENTLY PLED, AND THEY NEED NOT PLEAD DETAILS TO WHICH UNITED HAS DENIED THEM ACCESS.

It is widely accepted that federal pleading standards "do not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability probable."[57] To that effect, courts have recognized that in the context of ERISA claims, "information about insurance plans is often in the hands of the defendant-insurer and no matter how clever or diligent, ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail."[58] Accordingly, "an ERISA plaintiff does not need to plead details to which it has no access, as long as the facts alleged tell a plausible

---

[54] *See* ECF No. 1 at ¶ 28.

[55] *Id.* at ¶ 29.

[56] *Id.* at ¶¶ 30, 40.

[57] *Abira Med. Lab'y*, 2025 U.S. Dist. LEXIS 169348, at *15 (cleaned up) (quoting *Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) then citing *Mann v. Palmer*, 713 F.3d 1306, 1315 (11th Cir. 2013) and then citing *Lincoln Benefit Life Co. v. AEI Live, LLC*, 800 F.3d 99, 107 n.31 (3d Cir. 2015)).

[58] *Id.* at *15-16 (cleaned up) (quoting *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 598 (8th Cir. 2009)).

story."[59] In such cases, "while a plaintiff must offer sufficient factual allegations to show that he or she is not merely engaged in a fishing expedition or strike suit, the court must also take account of its limited access to crucial information."[60] This is essential, because if an ERISA plaintiff "cannot state a claim without pleading facts which tend systematically to be in the sole possession of defendants, the remedial scheme of the statute will fail, and the crucial rights secured by ERISA will suffer."[61] Because "MHPAEA is an amendment to ERISA," these principles apply equally to Plaintiffs' MHPAEA claim.[62]

Defendants' argument that Plaintiffs have failed to adequately plead their MHPAEA claim seeks to impose a heightened standard of pleading without legal justification. Many of the details they assert are missing from the Complaint are not available to Plaintiffs, not least because United ignored their *four* requests for documents that would contain such information before filing the complaint.[63] To grant Defendants' motion and dismiss Plaintiffs' MHPAEA claim on that basis would thus completely undermine the purposes of ERISA's remedial scheme.

---

[59] *Id.* at *16 (cleaned up) (quoting *Allen v. GreatBanc Tr. Co.*, 835 F.3d 670, 678 (7th Cir. 2016) and then citing *Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1353 (11th Cir. 2009)).

[60] *Id.* (cleaned up) (quoting *Braden*, 588 F.3d at 598).

[61] *Id.* (internal quotation marks omitted).

[62] *E.W. v. Health Net Life Ins. Co.*, 86 F.4th 1265, 1280 (10th Cir. 2023) (citing *N.R. ex rel. S.R. v. Raytheon Co.*, 24 F.4th 740, 746 (1st Cir. 2022)).

[63] *See* ECF No. 1 at ¶¶ 24-28, 31, 35, 39-40, 50-52, 55-57 & 60. Defendants argue that the MHPAEA regulations in effect during the relevant time period did not require them to respond to these requests. ECF No. 26 at 18. Plaintiffs contend that this nevertheless fell short of their broader fiduciary duties under ERISA. *See Jones*, 370 F.3d at 1071 (discussing ERISA fiduciary duties generally and "recogniz[ing] that the responsibility attaching to fiduciary status has been described as the highest known to law.") (citations and internal quotation marks omitted); *and D.K.*, 67 F.4th at 1239 (citations omitted) (clarifying that ERISA's implementing regulations "serve as minimum guidelines," and that plan administrators are "h[eld] . . . to their greater fiduciary duty [of] . . . provid[ing] a full and fair review . . . through a reasonable process, as consistent with the plan."). In any event, Defendants' argument does not support dismissal of Plaintiffs' claim; Plaintiffs cannot be expected to plead details Defendants withheld from them, regardless of whether Defendants were required to do so.

Plaintiffs' MHPAEA claim is adequately pled. The Complaint satisfies the standard cited by Defendants, in that it "identif[ies] the treatments in the medical/surgical arena that are analogous to the sought-after mental health-substance abuse benefit and allege that there is *a* disparity in their limitation criteria."[64] Plaintiffs alleged the facts supporting their MHPAEA claim in as much detail as they could, but were hindered from providing greater detail by United's refusal to provide the information they needed to do so. Accordingly, the Court should deny the Motion with respect to the Plaintiffs' second cause of action.

## V.   PLAINTIFFS' ERISA AND MHPAEA CLAIMS ARE NOT DUPLICATIVE AND MAY BE PLED SIMULTANEOUSLY.

ERISA and MHPAEA address different injuries and protect different interests. ERISA protects contractual benefits and imposes disclosures, fiduciary duties, and standards for operating certain employee benefit plans.[65] MHPAEA is different. Congress enacted MHPAEA to "end discrimination in the provision of insurance coverage for mental health and substance use disorders as compared to coverage for medical and surgical conditions in employer-sponsored group health plans."[66] In contrast to the relief sought under Plaintiffs' 29 U.S.C. §1132(a)(1)(B) claims, the equitable relief Plaintiffs seek in the MHPAEA cause of action is directed at addressing violations of the Parity Act. This relief is necessary to eliminate discrimination so that Plaintiffs will have access to coverage for mental health and substance use disorder treatment in the way Congress

---

[64] ECF No. 26 at 14 (emphasis in original) (internal quotation marks omitted) (quoting *Welp v. Cigna Health & Life Ins. Co.*, Np. 17-80237, 2017 WL 3263138, at *5-6 n.8 (S.D. Fla. Jul. 20, 2017)) (articulating the pleading standard for a MHPAEA claim); *and see* ECF No. 1 at ¶¶ 6-8, 13, 16-20, 41-42 & 46-49 (identifying sought-after mental health benefits); ECF No. 1 at ¶¶ 23, 48, 60 & 76 (identifying analogous medical/surgical treatments); *and* ECF No. 1 at ¶¶ 24, 30, 39, 49, 75 & 77-83 (alleging disparities in limitation criteria).

[65] *See U.S. Airways, Inc. v. McCutchen*, 569 U.S. 88, 100-02 (2013) (generally describing ERISA's impact on contract law); 29 U.S.C. §§1022, 1024, and 1104 (setting forth various key provisions of ERISA).

[66] *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 356 (2d Cir. 2016).

intended when it originally passed MHPAEA in 2008 and amended that statute as recently as 2020.[67]

Two Supreme Court cases serve as the guiding precedent for purportedly duplicative claims under ERISA, *Varity Corp. v. Howe* and *CIGNA Corp. v. Amara*. *Varity* suggests that the main concern in limiting remedies to either a 29 U.S.C. §1132(a)(1)(B) claim or a 29 U.S.C. §1132(a)(3) claim is to avoid lawyers "complicat[ing] ordinary benefit claims by dressing them up in 'fiduciary duty' clothing" to pursue the same "repackage[d]" claim under both provisions.[68]

The Court's primary concern was that a plaintiff could use this to avoid the "arbitrary and capricious" standard of review applied to 29 U.S.C. §1132(a)(1)(B) under *Firestone Tire*, instead availing themselves of the "rigid level of conduct" expected of fiduciaries.[69] The ruling in *Varity* was narrow, and the Court stated "that where Congress elsewhere provided *adequate relief* for a beneficiary's injury, there will *likely* be no need for further equitable relief, in which case such relief *normally* would not be 'appropriate.'"[70]

Here, not only may 29 U.S.C. §1132 fail to provide "adequate relief" outside of (a)(3), but Plaintiffs also do not seek to avoid the arbitrary and capricious standard of review by pursuing a claim for breach of fiduciary duty. Instead, Plaintiffs pursue a claim under 29 U.S.C. §1132(a)(3) to remedy a violation of MHPAEA, which does not pose the same threat to deferential review of plan administrator decisions regarding plan benefits. Indeed, the equitable relief afforded by

---

[67] 116 P.L. 260, Division BB, Title II, Sec. 203. STRENGTHENING PARITY IN MENTAL HEALTH AND SUBSTANCE USE DISORDER BENEFITS; 29 U.S.C. §1185(a)(6), (7) & (8).
[68] *Varity Corp. v. Howe*, 516 U.S. 489, 514 (1996).
[69] *Id.* at 513-14.
[70] *Id*. at 515 (internal citations and quotations omitted) (emphasis added); *Christine S. v. Blue Cross Blue Shield of N.M.*, 428 F. Supp. 3d 1209, 1221 (D. Utah 2019).

Plaintiffs' MHPAEA claims is entirely distinct from that afforded by a claim for benefits under ERISA in 29 U.S.C. §1132(a)(1)(B).

The second case of import, *CIGNA Corp. v. Amara*, further supports this reasoning. It states that the language of 29 U.S.C. §1132(a)(1)(B) "speaks of '*enforc[ing]*' the 'terms of the plan,' not of *changing* them."[71] In *Amara*, the Court reversed a ruling in favor of plaintiffs on a 29 U.S.C. §1132(a)(1)(B) claim and remanded the case for consideration of a claim under 29 U.S.C. §1132(a)(3), stating that the plaintiffs could seek equitable relief in the form of plan reformation, estoppel, or surcharge.[72] Functionally, *Amara* permitted the plaintiffs to pursue claims under both 29 U.S.C. §1132(a)(1)(B) and 29 U.S.C. §1132(a)(3), and after considering the merits of the plaintiffs' claim for benefits, permitted the lower court to examine whether equitable relief under 29 U.S.C. §1132(a)(3) was appropriate.[73]

What *Varity* and *Amara* construct is a "general *remedy* preference for awarding monetary relief under [§1132](a)(1)(B) rather than equitable relief under [§1132](a)(3)."[74] These cases "do not establish a categorical rule prohibiting [p]laintiffs from pleading two different causes of action under [§1132](a)(1)(B) and [§1132](a)(3)… [m]oreover, in both *Varity* and *Amara*, the courts were able to determine the adequacy of potential ERISA remedies only after a trial in the district court[,]" and assessment of which remedy is adequate should properly occur later in litigation.[75]

---

[71] *CIGNA Corp. v. Amara*, 563 U.S. 421, 436 (2011).

[72] *Id.* at 438-45.

[73] *Christine S.,* 428 F. Supp. 3d at 1222 (citing *Amara*, 564 U.S. 421).

[74] *Id.* at 1222.

[75] *Id.*; *accord Jones*, 370 F.3d at 1074 ("We cannot extend *Katz* to deny the Appellants the remedy that the Supreme Court explicitly endorsed in *Varity*, or allow it to effectively eviscerate ERISA's clear mandate that fiduciaries discharge their duties 'solely in the interest of the participants and beneficiaries.'") (first citing *Katz v. Comprehensive Plan of Grp. Ins.*, 197 F.3d 1084 (11th Cir. 1999); then citing *Varity*, 516 U.S. 489 (1996); and then quoting 29 U.S.C. § 1104(a)); *see also George v. CNH Health & Welfare Ben. Plan*, No. 16-CV-1678-JPS, 2017 U.S. Dist. LEXIS 77437, at *12 (E.D. Wis. May 22, 2017) ("If more than one theory is ultimately successful… the Court

Calling the MHPAEA cause of action duplicative of Plaintiffs' claim for benefits and asserting that Plaintiffs seek the same remedy in each cause of action ignores the spirit of both MHPAEA itself and Supreme Court precedent on ERISA claims.[76] Denying a claim asserted under §1132(a)(3), like the MHPAEA cause of action here, is appropriate only if the alleged injury to the plaintiff may be completely remedied by a claim under §1132(a)(1)(B), a determination not possible at the motion to dismiss stage.[77]

Defendants rely heavily on the Eleventh Circuit's decision in *Ogden v. Blue Bell Creameries U.S.A., Inc.*, but this predates the Supreme Court opinion in *Amara* that now controls and clarifies that an 1132(a)(3) claim and a 1132(a)(1)(B) claim can be brought concurrently, with the understanding that no duplicate recovery can be had.[78] Defendants' focus on compensatory damages ignores the scope of equitable relief requested. Plaintiffs' Complaint requests injunctive, declaratory, and other equitable relief for their MHPAEA claim.[79]

Plaintiffs do not seek a compensatory remedy that would lead to a double monetary recovery, rather they seek a distinct remedy for a separate injury that this Court can craft after briefing. The equitable remedies contemplated by the MHPAEA cause of action are distinct from any award of

---

must *then* carefully consider whether the available remedies are inappropriately duplicative."); *see also N.Y. State Psychiatric Ass'n, Inc. v. UnitedHealth Group*, 798 F.3d 125, 134 (2d Cir. 2015) (same).

[76] *See Varity*, 516 U.S. at 515; *Amara*, 563 U.S. at 436 (2011); *Christine S.*, 428 F. Supp. 3d at 1221; *Denise M. v. Cigna Health & Life Ins. Co.*, No. 2:19-cv-764-JNP, 2020 WL 5732321, at *18-20.(D. Utah Sep. 23, 2020); *Brianna S. v. UnitedHealthcare*, No. 2:18-cv-00672-DBB, 2021 U.S. Dist. LEXIS 19997, at *23-24 (D. Utah Jan. 29. 2021); and *Theo M. v. Beacon Health Options*, No. 2:19-cv-364-JNP, 2020 U.S. Dist. LEXIS 166903, at *19-20 (D. Utah Sep. 11, 2020).

[77] *Christine S.*, 428 F. Supp. 3d at 1220.

[78] ECF No. 26 at 19 (citing *Ogden v. Blue Bell Creameries U.S.A., Inc.*, 348 F.3d 1284 (11th Cir. 2003)); *see also Gimeno v. NCHMD, Inc.*, 38 F.4th 910, 916 (11th Cir. 2022) ("The defendants misunderstand our holding in *Ogden*. A plaintiff can plead as many alternative claims as he wants, 'regardless of consistency.'" (citing Fed. R. Civ. P. 8(d)(3)).

[79] *See* ECF No. 1 at ¶ 86.

benefits under Plaintiffs' 29 U.S.C. §1132(a)(1)(B) claims, and "[r]egardless of the outcome of the denial of benefits claim, the question of whether the Plan – or [United]'s administration of the Plan – violates the Parity Act may still remain to be decided."[80]

Defendants' attempt to limit the scope of equitable relief available to Plaintiffs via piecemeal dismissal of claims is inappropriate at this stage and has been "expressly rejected" by other courts.[81] While Plaintiffs do not assert that reformation of the Plan would apply to the rights of others, 29 U.S.C. §1132(a)(3) clearly provides that:

> [A] civil action may be brought by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

Unlike 29 U.S.C. §1132(a)(1)(B), which explicitly limits civil action to claims to recover benefits "due to him" under the Plan and to enforce "his rights" under the Plan, no such limitation exists in 29 U.S.C. §1132(a)(3). Allowing equitable relief via reformation of the Plan terms under the MHPAEA cause of action will explicitly fulfill the purpose of that statute: preventing an ERISA plan from inappropriately discriminating against mental health/substance use disorder treatment benefits owed to Plaintiffs.[82]

Plaintiffs' MHPAEA cause of action is not a repackaging of their claims for benefits. Instead, it is a distinct injury with a distinct remedy, without which Plaintiffs may not have their

---

[80] *M.S. v. Premera Blue Cross*, No. 2:19-cv-00199, 2020 U.S. Dist. LEXIS 61789, at *14 (D. Utah. April 7, 2020), *rev'd in part on other grounds*, *M.S. v. Premera Blue Cross*, 118 F.4th 1248 (10th Cir. 2024)).

[81] *Id.* at *15.

[82] *See* 29 U.S.C. §1132; *see also Am. Psychiatric Ass'n*, 821 F.3d at 356 (observing that Congress enacted MHPAEA "to end discrimination in the provision of insurance coverage for mental health and substance abuse disorders as compared to coverage for medical and surgical conditions in employer-sponsored group health plans.").

claim evaluated fairly.[83] Plans are precluded from deciding if coverage applies when an alleged

MHPAEA violation could affect the decision to award benefits, as is the case here.[84]

At minimum, at the motion to dismiss stage the Court lacks substantial evidence to evaluate

these potential remedies, and it would be premature to determine whether Plaintiffs' (a)(1)(B)

claims would provide adequate relief.[85] At the pleading stage "it is difficult to determine if relief

is indeed owed under §1132(a)(1)(B), and requiring the plaintiff to pursue that path may foreclose

the plaintiff from bringing a better case pursuant to §1132(a)(3)."[86] Until the merits of Plaintiffs'

claims are determined, this Court will not know the scope of equitable relief, if any, to which

Plaintiffs are entitled, and dismissal would consequently be premature.[87]

## **CONCLUSION**

Defendants' Motion entirely fails to establish that any part of Plaintiffs' Complaint should

be dismissed. At best, its arguments are predicated on a partial reading of the allegations in the

Complaint, largely supported by non-binding and/or superseded authority, completely bypassing

numerous critical facts in the process, as well as entire independent grounds for relief. Moreover,

their case for dismissal revolves primarily around affirmative defenses for which they ultimately

bear the burden to prove, which is an inappropriate basis for dismissal.

Despite their conclusory assertions to the contrary, the well-pled allegations in Plaintiffs'

Complaint fully satisfy federal pleading standards and adequately state claims upon which relief

may be granted. It would seem that, in their hunt for a "meritless goat[]," Defendants missed the

flock of "plausible sheep" grazing nearby.[88]

---

[83] *See Denise M.*, 2020 WL 5732321, at *13 (D. Utah Sep. 23, 2020).
[84] *Danny P. v. Cath. Health Initiatives*, 891 F.3d 1155, 1158 (9th Cir. 2018).
[85] *Denise M.* 2020 WL 5732321, at *18-20.
[86] *Silva v. Metro. Life Ins. Co.*, 762 F.3d 711, 727 (8th Cir. 2014).
[87] *See generally M.S.*, 2020 U.S. Dist. LEXIS 61789, at *13-14.
[88] ECF No. 26 at 7 (quoting *Dudenhoeffer*, 573 U.S. at 425) (internal quotation marks omitted).

RESPECTFULLY SUBMITTED this Friday, February 6, 2026.

/s/
Edward Philip Dabdoub
**Dabdoub Law Firm PA.**

*Attorney for Plaintiffs*


/s/ Brian S. King

Brian S. King
**BRIAN S. KING, P.C.**

*Attorney for Plaintiffs*

(Admitted *Pro Hac Vice*)